Thank you. May it please the court. My name is Catherine Hart, and I represent Luke Scarmazzo. Mr. Gary Huss represents Ricardo Montes. I would request that I have ten minutes for the opening argument, and that Mr. Huss have five minutes, and that we reserve five minutes for rebuttal. Very well. Your Honors, in this case, the district judge, Judge Wanger, ignored compelling U.S. Supreme Court and Ninth Circuit precedent in failing to conduct an evidentiary hearing on the issue of jury misconduct. The district court judge found that there was misconduct. In fact, although he didn't use the word egregious, he found that it was significant misconduct in having a juror read an article on a website. Well, let's figure out, first of all, what it was that the juror read. I thought it was a summary of the article. The juror read a summary of an article that was on the San Francisco website, and it was an article that was entitled, Next President May Be Gentler on Pot Clubs. Now, let me ask you, Counsel, it seemed to me that this evidence might be more favorable to your client than otherwise. Does that make a difference when we're talking about jury misconduct? It could be harmless if, in fact, what they were talking about was saying, yeah, these fellows are soon going to be legal, or at least they're not going to be prosecuted. Judge Fletcher, that is the position that the district court judge took, that, well, if it says the next president might be gentler on pot clubs, that that could make it harmless. I submit that having in a jury room a statement about the next president might be gentler on pot clubs invited rampant speculation about what the effect of the next president would be or what the effect of the then-president, George Bush, would have been, because this was in May of 2008 that the jury was deliberating. Counsel, the statement itself was not in the jury room. There was no printed copy of the statement, was there? No. You're absolutely correct, Judge Rawlinson. There was no printed copy of the article in the jury room. There was juror number three who claimed that he had read the article and that he had ---- Read the article or read a summary? All I read in the transcript was the word summary. Well, I guess it was a summary of an article, but that he had then gone into the jury room and had then discussed with another juror, with juror number three. Juror number five, wasn't it? I'm sorry. It was juror number three who had read the summary and had brought it into the jury room in his mind and then had discussed it with juror number five, but juror number three in his declaration did say that it was discussed in the jury room. Juror one of the jurors was ready at the time that Tony Capozzi, the trial attorney for Luke Scarmazzo, at the time that he was making his request to the judge for an evidentiary hearing, he made an offer of proof that he had talked to four jurors and that the four jurors had said that it was substantially discussed. Now, I agree, the article itself ---- Okay. What was substantially discussed? I'm still trying to figure out what the summary consisted of beyond the title. That the subject was substantially discussed. The subject as reflected in the title, that the next President might be more lenient. Yes. The problem, Judge Tolman, is that we don't know exactly what was discussed in the jury room. I mean, your questions are very, you know, penetrating and incisive questions. We don't know exactly what was discussed in the jury room because we didn't get a full hearing. We have a juror declaration saying that the subject of the hot clubs or the subject of that article, that the subject was discussed in the jury room. We have an offer of proof through the defense attorney that it was substantially discussed. So we know for a fact that some subject about the activity, potential activity of the next President, that it was discussed within the jury room. That, then, is not simply an ex parte contact. It is extrinsic evidence that is imported into the jury room. I understand that, Counsel. But this case is quite different from ones where somebody has read an article that says this fellow really had robbed three banks before. Something like that. And I have been struggling in my mind with how this could possibly have done anything but be helpful to your client. Well, by bringing in the whole speculative atmosphere of what could happen under another administration could have, indeed, affected jurors to decide, well, if another President is going to be gentler on pot clubs, then, well, my decision doesn't matter, so I'm not going to hold the prosecution to its burden of proof. Or, on the same token, a juror could decide, well, if the next President is going to be gentler on pot clubs, and I don't like pot clubs, I'm going to find less of a standard of proof, and I'm going to convict this person now. I thought the thrust of your argument, though, to the district court was not that theory, but the theory that if the jurors believed that this was not that big a deal from a punishment perspective, that they'd be more inclined to vote in favor of Well, yes, there's that argument as well. I was trying to add on to the argument beyond what was simply in the briefs. Well, counsel, we've got to confine ourselves to the argument that was made to the district court, and I didn't see that argument in the record. Now, maybe I missed something, but your argument before the district court dealt with punishment. That is correct. Okay. But the fact that it dealt with punishment and a jury is instructed that they are punishment is what makes this case prejudicial. And with regard to what Judge Fletcher said Well, the district court, I think, walked a very careful line as 606B requires it to do, because now you're starting to get into the actual subjective discussions of the jury, which the rule says we can't peek inside that box. Absolutely, we cannot. And I have attempted to circumscribe my argument that goes only to the subject matter that came into the jury room, and we don't know Which is why I asked you the questions I did, because it seems to me that your best argument has to be whatever the summary was, it was extrinsic, and it was impermissible because it dealt with or suggested punishment, and therefore it can't be harmless under Bagnerio and the various cases that we have decided. That's correct. And in examining every one of those cases that is mentioned in my brief and in my opening brief and reply brief, I could not find one case involving extrinsic evidence where the district court or the trial court hadn't conducted a hearing or where this court did not order a hearing and send it back in. Well, the Supreme Court has said a hearing is not required in every case. The question is, is it an abuse of discretion on the part of the district court, given the nature of the extrinsic evidence, not to order a hearing? It's not required in every case, but in the U.S. v. Rosenthal, a case that was decided by or the opinion was decided by Judge Fletcher, a hearing had been conducted at the district court level, and it did involve extrinsic evidence. And the extrinsic evidence was a juror who had talked to an attorney, and the attorney had said, follow the law, or you'll be in trouble with the judge. Now, this court ruled that that – that a searching inquiry had to be made whenever there was an issue of extrinsic evidence. And I'm just saying in every single case I looked at. So you are arguing that if it's extrinsic, then a hearing is always required. I'm saying that I couldn't find a case of extrinsic evidence where this Court had not either remanded for a hearing or had already had a hearing. In the Brand case, this Court sent it back for a hearing. In U.S. Keating, the first Keating case, this Court sent it back and remanded it for an evidentiary hearing, always where there had been extrinsic evidence as opposed simply to ex parte communication. So count – Let's look at what could be questioned about if a hearing had been allowed. We can't get into the juror's head, so we can't really get ourselves into what they actually were talking about. That's not – not where we can go. That's not. But we can get into how long was this discussed, at what point of the criminal proceedings was it discussed. I believe we know that it was during the jury deliberations. It's significant, I think, that the jury deliberations in this case were fairly lengthy. A juror – the jury was set out one day, and then one juror said that that juror, he could not sit fairly in the case. So the jury then was reconstituted with an alternate the next day. And that jury deliberated all day long, and then the jury deliberated for the next day and came back with questions at about 1245 of the next day, and then brought back its verdicts later that afternoon. So we know that we have approximately two days that the jury could have considered this. We know from the proffer that the jury had discussed it substantially. That's not in the declaration. It was in the attorney proffer. So we could determine the lengths that it was discussed, the extent to which it was discussed, and I believe that the Court could inquire as to what aspects of this were discussed. I mean, we know because we've seen the print of the whole article, but we know that the whole article was not brought into the jury room, but we would be able to inquire as to whose opinions were discussed without going into the mental processes or effects. I take it you tried and couldn't find the summary off San Francisco Gate website. I believe that that is in the excerpts of the summary. No. I've read the article, but I think the problem is that we don't know what the website summary read. That's correct. We don't have the website summary. We have the whole article. Did you want to save some time for Mr. Hatch? Oh, yes.  All right. Mr. Hatch? Good morning. May it please the Court, I'm Gary Hatch, appearing for Mr. Montes. Could you lift that microphone up? It's a little difficult to hear you. Thank you. As you probably could tell from my reply brief, I continue to struggle with the issue of  preemption in this case and the sovereignty, what I would call the sovereignty of the State of California. And what I mean by that is California has occupied the field of trying to regulate medical marijuana. Congress has not actually occupied that field in the sense that they continue to ignore medical data that marijuana does have medicinal value. But, Counsel, didn't you lose that argument or the proponents of your position lost that argument when the Supreme Court handed down Oakland Cannabis? Didn't you lose? Isn't that argument gone? I wouldn't concede that. I wouldn't concede that. I keep looking at the preemption issue. There's always hope. And when the Court talks about occupying a field, the fact is this activity continues as we speak in the city of Oakland. At risk of federal prosecution. And my client is in jail or in prison for 20 years for doing what other people are allowed to continue doing in communities of California. So I see it really as an issue of California's sovereignty vis-a-vis the initiative that was passed. I'm having a little difficulty given the volume. $9.2 million sold to virtually anybody who could download an internet form and self-prescribe the medicine that he was really a legitimate cannabis club. And the jury apparently bought the government's argument that he was really a drug dealer running a continuing criminal enterprise. It's hard not to come to that same conclusion when you look at the videotape in this case. I agree. But the way I took that was that there's a reason that the appellants perhaps displayed so much arrogance and defiance. And maybe it was because California had legalized their conduct. But it's pretty defiant of the federal government. I think we were all surprised at the government's decision of the Supreme Court in the Reich case. But there it is. And it's hard to get around it. I understand. I have the same struggle with the concept of continuing criminal enterprise when you have people engaging in conduct that in California is lawful, and yet their sentence gets doubled by the very fact that a jury finds a continuing criminal enterprise. This is not conduct that occurred on federal land or in a federal institution or on federal property. It happened on California soil. Yeah, but that's always the risk when a drug case goes to the federal courts as opposed to the state courts. Even a run-of-the-mill, you know, possession of cocaine or sale of marijuana or any of the other drug offenses, you know, that's the risk you take. And, you know, I talk to school kids all the time, and I tell them there's a difference between state court and federal court in terms of drug crimes. And you don't get to choose the form. The police get to choose the form. So you do it at your own risk. I understand that as well. But what I see in this case is an overreaching of the federal government in trying to regulate something it doesn't need to that the California citizens want to regulate. And I think a line needs to be drawn by this court as to how far the federal... But what you're really asking us to do, Mr. Huss, is to overrule Supreme Court precedent, which has upheld against on an interstate commerce clause theory that Congress can't regulate homegrown marijuana. And the Supreme Court says, yes, it can. Well, in different contexts, we've been accused of doing that. But we won't do it again. And the Supreme Court will tell us if we do. Well, maybe I should have introduced myself as Mr. Chioti. Because this continues to be a conflict, and it goes unresolved. And my hope is that this court can find a way to resolve the conflict definitively. Thank you. Okay. Thank you, Mr. Huss. Good morning, Your Honors. May it please the Court, my name is Kathy Servatius, and I'm an assistant United States attorney who indicted the defendants, responded to their motions, took them to trial, prepared for you a 100-page opposition brief, and am now standing before you. The — in response to counsel's argument as to the juror misconduct, the defendant's reply brief in that regard cites Remmer II of the Supreme Court, indicating that an evidentiary hearing is always necessary. And I believe that the case law cited by the government in its brief, and that this Court has referred to, that it's not always necessary, is in fact the prevailing law. So why wasn't an evidentiary hearing indicated in this case in view of counsel's observation that there could have been more evidence flushed out in terms of at what point in the deliberations the information came to the attention, how long the summary was discussed, how many jurors were involved in the discussion? None of this evidence is in the record. And opposing counsel's point is if this evidence had been placed in the record, we could better, or the Court could better assess the likelihood of misconduct as a result of the evidence. Well, I think what the Court did in this case is that it viewed the evidence in the light most favorable to the defendant, like you would in a summary judgment motion. You had one juror who indicated that he had read, yes, a summary of the article that was in the San Francisco Chronicle, and he could not recall the substance of the summary. So even if we had questioned jurors, the most we would ever get is what was actually in the article. And it's clear that everything in the article was not discussed. Now, can you tell us at what point in the deliberations the evidence was introduced, how many jurors actually heard the discussion? Well, the article itself only came out in the San Francisco Chronicle on May 12th. We did closing arguments and deliberations started on the 13th. So the Court took into account that the most time that it was available was from May 13th to 14th, and then the verdict came back on the 15th. What did the Court decide about how many jurors were actually exposed? Well, the cases that the defendant has cited has indicated that if one juror is adversely affected or prejudiced by the information, then there's an issue as to granting a new trial, that a new trial can be granted. But it makes a difference. As a trial judge, it makes a difference how many jurors were exposed. And we know that there were at least two. And so the Court assumed that it was discussed in the presence of all the jurors. But what the Court actually got to was the most important issue that the cases rely on, and that is what is the nature of the information that was presented to the jury? You can't ask subjectively how they used that information. But you can ask the jurors, what did you say about, what did you hear said about the summary? You know, what did you overhear? And that's the point of having the evidentiary hearing. As a trial judge, I want to know exactly what was said, not so much what the summary said, but what the jurors said in response to the summary. And that's the part that you don't get if you don't have an evidentiary hearing. I believe that the important part that the Court was considering was what information that wasn't part of the court record was presented to the jury. Exactly. And you don't know that if you don't know the discussions that took place as part of the case. But jurors are allowed to talk amongst themselves about their opinions. Not about extraneous evidence, they're not. If it's inappropriate for the evidence to come into the jury room, it's inappropriate for the jurors to discuss that evidence. So what the government's position and what the Court said is, is that the information was limited to what was in the article. It could not have expanded upon it because the juror said that he brought into the jury room the fact that there was an article that the pot clubs were going to be treated more leniently by possibly the next administration. The Court looked at the fact that that's political talk. It wasn't unique to any individual defendant in the case. It didn't address the issues in the case. And what was out there as evidence in the case, and it was allowed to come in by the Court as evidence as to the enterprise. There was a, I believe a mistake, but the judge believed that the enterprise in the case was the California Health Care Collective. And so evidence did come in as to how these individuals conducted their business, as to whether or not they made individuals have recommendations. So the issue as to state and Federal law was there in the courtroom the entire time. So the information was the jury was told in instructions that that type of information couldn't be considered by it in a judging the guilt or innocence of the defendants. And every day they came in and were told that they couldn't read articles about the case, that the evidence had to be in the courtroom. Ginsburg. As a child judge, it's a very serious infraction for a juror to go outside the evidence in the courtroom and read newspaper articles. That's why we instruct them at every break, do not read any newspapers. Do not watch TV. Do not discuss this case until it's given to you. So. But, Your Honor, you know that if you go on to AOL or Yahoo or Google, the opening face page has the newspaper articles or the events of the day. So what the juror had said was he looked at that and there was a summary. And that would have been fine if the juror looked at it, didn't come back into the jury room and discuss it. As a trial judge, I wouldn't have had a problem with that. But once the juror sees that extraneous information and then comes back to his fellow jurors and wants to discuss it, that's when I think it's incumbent upon the trial judge to make sure that the deliberations haven't been tainted at that point by discussion of the information that should have never come into the jury room. And I just believe that in this context, the Court assumed that all of the jurors were part of the discussion and assumed that every fact in the article may have been presented to the jury. But we don't know what the discussions were. But the discussions aren't at issue. What's at issue is the information that the jury had that was extraneous. That's not true. That's not how they affected that. That's not true. As a trial judge, you want to know if somebody brings an article into the jury room and then there's discussion about that article, you want to know if those discussions have tainted the evidence that was brought into trial. And without an evidentiary hearing and you don't know what the jurors said about the article, you have an incomplete picture. But you're not allowed to know what the jurors said. Yes, you are. You're not allowed to know what the jurors thought about what was said. But you're allowed to know what the jurors said in terms of the article. I'm sorry, Your Honor. I disagree. I believe 606 prevents the trial judge. And I've conducted these hearings. And I know what the jurors, the judges know the difference between talking about the deliberations and how the discussions affected them. That's what you can't get into, how did the discussions affect you, but the evidence of what was said in terms of the articles are admissible to the extent that they don't go into the how it affected the deliberations. Otherwise, you would never know what information came into the jury room. Your Honor, you can ask what information came into the jury room, but the other jurors hearing the information isn't extraneous information. What the other jurors heard the individual jurors say is important. And the Court here just assumed that the jurors said everything about the article. There's nothing in the article that's prejudicial to the issues in the case. The jury had been instructed not to consider punishment and the article did not discuss punishment. It discussed the conflict between the Federal and the State court as to the prosecution of these individuals, not as to whether or not they actually violated Federal law. And it was the jury to determine if they actually violated the Federal law. And they would have had to have been living under a rock if they didn't know for the last 14 years that the State and Federal government are at odds with the marijuana policy. But that doesn't justify bringing a summary of a newspaper article into the jury room and discussing it. No, it doesn't. And the Court found that there was misconduct, but the Court found that the information that was brought into the jury room could not have prejudiced the jury. And I don't believe that having a hearing at this point, although, if the Court is inclined to overturn and grant a new trial, I would absolutely ask for a hearing. Well, I was just going to say, do we have to go that far? No, the harm was there. Counsel, let me finish my question before you start answering it. Or can we simply remand and have the Court bring the jury back and conduct a hearing once it's developed a record, then make a determination as to whether, based on what the jurors heard, would have tainted the verdict? The Court can grant the hearing. Absolutely, it can. The Court can also make the decision that this issue is harmless in light of the overwhelming evidence. Both defendants admitted completely their involvement in the California health care, why they did it and how they did it. There is absolutely no issue that they admitted this crime. And in light of the overwhelming evidence, I don't believe that the Court can find that the information was prejudicial to the verdict. All right. I assume the government has just rested. Ms. Hart. Thank you. Unlike Mr. Huss, I have not tried to tilt at windmills like Don Quixote. I've tried to just concentrate on very, very legalistic arguments. Without characterizing the argument that you just heard. Why don't you just confine yourself to the law? Yes. There was prejudice in the fact that a juror did bring in extrinsic evidence. We don't know the extent of it. Well, but that's not in and of itself prejudice. It's a two-pronged inquiry. Was there extraneous information brought in? And the second prong is, if so, was it prejudicial? Isn't that the analysis? Yes. But there is enough information here to call for an evidentiary hearing. I mean, I would like to be able to argue that there's enough there for a new trial, but I simply have not found cases where a court has granted a new trial without an evidentiary hearing. In Rosenthal, that case came to the court with an evidentiary hearing having been conducted. In Keating, the first Keating case came to the court without an evidentiary hearing. You ordered a hearing. To go back to the Rosenthal case, this Court didn't really examine the evidence so much in Rosenthal as it said that the basically you didn't use the word interorum effect, but the effect of a juror saying to another juror, you must follow the law or you'll get into trouble with the judge, created a bias in the jurors. And in that case, you disagreed with the district court's analysis and you ordered a new trial in Rosenthal without a specific regard to the quantum of evidence. Now so what's our standard for deciding whether or not there's prejudice? If we assume that there was jury misconduct by having this information in the jury room, what's our standard for determining whether or not there's prejudice? If it's extrinsic evidence, you have to find that it is harmless beyond a reasonable doubt and the burden is placed on the government to prove that whatever affected the jury that it was harmless beyond a reasonable doubt. And that certainly was done in a number of cases of this Court where you found that it was harmless after an evidentiary hearing. There are a number of cases where you did find that the injection of the extrinsic evidence was harmful because it could have biased one juror, and if one juror was biased, then the trial wasn't fair. Can we look at the evidence in this case without an evidentiary hearing to determine whether or not the evidence was so overwhelming that any error in the jury misconduct is overcome by the overwhelming nature of the evidence? In the Rosenthal case, which you reversed for extrinsic evidence affecting jurors, you did not look at the evidence and say there was overwhelming evidence, and that was a reason for your decision.  was overwhelming evidence, and that is the reason for doing marijuana for distribution. The Rosenthal was quite an interesting case in that what the juror did was call up a lawyer friend and, in effect, say how do I have to vote. And then the attorney said you have to follow the law or you'll get into trouble with the judge. And it was that remark that you found could have created bias. Isn't that correct? Yeah, and that's what told the juror how to vote. But, you know, with regard to the question of prejudice and if there was overwhelming evidence in this case, would it be necessary to conduct an evidentiary hearing, excellent, excellent question, of course, because this Court, nor the U.S. Supreme Court, has not found structural error in extrinsic evidence. You found structural error where there was Ferretta error, where there was denial of counsel, where there was a biased judge. But I agree you haven't found structural error. So to some extent, yes, you were permitted to look at the evidence, even though in some cases, Keating and Rosenthal, it didn't appear that you looked at the evidence. But in this case, because the jury did not convict on the conspiracy, they hung on the conspiracy, which is a lesser included offense of the CCE, because the jury was out, I wouldn't say a protracted period of time, but at least they were out over a day and a half, because the jury did acquit on count eight for my client, which was the use of a firearm as part of the drug trafficking. And because the jury had numerous questions the second day, I submit that the case is not so overwhelming that there isn't room for finding that the evidence was close to some degree. So that would answer, I hope, that question. Thank you very much. You are out of time, and the case just argued is submitted. Thank you for your arguments.
judges: Fletcher B. , Tallman, Rawlinson